E.M. RADCLIFFE, et al., Plaintiffs,

v.

FOUNDERS TITLE COMPANY, et al., Defendants.

No. 86–370–1–MAC (WDO).

United States District Court,
M.D. Georgia,
Macon Division.

Sept. 15, 1989.

Russell M. Boston, Macon, Ga., Frank W. Riggs, Wayne P. Turner, Montgomery, Ala., for plaintiffs.

Charles A. Moble, Macon, Ga., Albert Fendig, Jr., Brunswick, Ga., J.R. Buderus, Soquel, Cal., for defendants.

## ORDER

OWENS, Chief Judge.

Presently before this court in the above-captioned case are the motions for summary judgment of defendant Founders Title Company and defendant John Edward Nohrden. Defendants seek summary judgment on six grounds:

1. Lack of personal jurisdiction of this court over defendants Founders Title and John Edward Nohrden;

2. Improper venue;

3. Plaintiffs' claims under federal RICO are barred by the statute of limitations;

4. Plaintiffs E.M. Radcliffe and Radcliffe Investment Company have no cause of action under the Georgia RICO statute because Georgia substantive law does not apply to them;

5. Plaintiffs' common law fraud claims are barred by the statute of limitations; and,

6. Plaintiffs have failed to establish the "continuity" requirement required for maintaining a RICO action.

This court will first address the issue of whether it has personal jurisdiction over the defendants.

As defendant Founders Title stated in its brief, in order for this court to have jurisdiction over defendants they must have purposely established minimum contacts with this state. In support of plaintiffs' contention that each of the defendants in the present case had sufficient contacts with the State of Georgia to enable this court to exercise personal jurisdiction over defendants, plaintiffs rely on *Bowling v. Founders Title Co.*, 773 F.2d 1175 (11th Cir.1985), *cert. denied*, 475 U.S. 1109, 106 S.Ct. 1516, 89 L.Ed.2d 915 (1986). In ruling that the United States District Court for the Middle District of Alabama had personal jurisdiction over defendant Founders Title in *Bowling* (a case involving the same plan and dealings of the same defendants

as in the present case), the court discussed personal jurisdiction as follows:

Founders argues that the fraud judgment is invalid because the company lacked the minimum contacts necessary to establish personal jurisdiction in the Middle District of Alabama. Founders' contacts with Alabama consisted of several phone calls and the mailing of receipts to the plaintiffs, and the knowledge that Buderus was buying land in the state.

In assessing whether personal jurisdiction is proper, this Court asks whether the defendant "has purposefully availed himself of the benefits and protection of the forum state's laws, whether the forum state has any special interest in exercising jurisdiction, and whether the convenience of the parties favors litigating in another state." *Austin v. North American Forest Production*, 656 F.2d 1076, 1089 (5th Cir.1981). To determine whether there has been purposeful availment of a state's laws, the court further inquires whether the defendant had a "deliberate" or merely a "fortuitous" contact with the state.

We find that Founders' contacts in the present case, although admittedly few, were deliberate and knowing. Founders agreed to act as escrow agent for Buderus, whom it knew was purchasing large quantities of land in Alabama—thus, appellant was well aware of the *situs* of the scheme. Although the phone calls were initiated by the plaintiffs, Founders knowingly gave them information (via Nohrden, a company officer) to induce them to sell the land. Founders also mailed receipts to the plaintiffs in Alabama. These contacts were directly connected to the cause of action in this case. Further, Founders is by no means unsophisticated or parochial: it is an established commercial entity that regularly conducts interstate business. Thus, there is no unfair surprise in the maintenance of this suit in Alabama. In short, Founders was well acquainted with the players and the plot, the Alabama setting, and the importance of its own well-rehearsed, albeit supporting, role in this

scheme. The district court's exercise of personal jurisdiction here does not offend due process.

In the present case, as in *Bowling*, defendant Founder's contacts with the potential forum state consisted of: (1) phone calls; (2) the mailing of receipts to the plaintiffs; and, (3) knowledge that defendant Buderus was buying land in the state. In the present case defendant argues that the phone calls were initiated by plaintiffs; however, in *Bowling* the Eleventh Circuit found the same such calls initiated by the plaintiffs to be deliberate and knowing contacts with the state and were "directly connected to the cause of action in this case."

█ Although defendant Founders denies this court has personal jurisdiction over Founders with regard to all plaintiffs in the present action, plaintiff argues the court should analyze the cause of action of each plaintiff separately in the court's determination of whether it can assert personal jurisdiction over Founders. The court will first analyze the claims of the "Cobb plaintiffs." Each of the Cobbs own an interest in land in Washington County, Georgia in the Middle District of Georgia. The Cobbs' broker, Prentiss Edwards, who works in the Middle District of Georgia received alleged misrepresentations by telephone in the Middle District which caused damages to the Cobbs concerning their Washington County property. In accordance with the Eleventh Circuit's ruling in *Bowling*, this court finds that under the facts of the present case that defendant Founders certainly has sufficient deliberate and knowing minimum contacts with the State of Georgia for this court to exercise personal jurisdiction with regard to the claims of the Cobb plaintiffs.

█ The court will now address the claims of plaintiffs E.M. Radcliffe and Radcliffe Investment Company. E.M. Radcliffe is an Arkansas resident who dealt with real estate agent Umphrey Bowling, an Alabama resident, concerning land located in Mississippi. E.M. Radcliffe states that he is the alter ego of Radcliffe Investment Company and defendant admits the

only difference between Radcliffe Investment Company and E.M. Radcliffe is that Radcliffe Investment owns property in Georgia. In support of its argument that this court has jurisdiction over defendant, plaintiff cites the case of *Delong Equipment Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843 (11th Cir.1988). Plaintiff argues that under the three part Shellenberger test set forth in *Delong*, the contacts of defendant are sufficient minimum contacts to justify this court's exercise of personal jurisdiction. The Shellenberger test is set forth below with emphasis in part two as supplied by defendant in its brief:

> (1) the nonresident has purposely done some act or consummated some transaction with or in the forum (but the actual act or omission resulting in the injury here need not have occurred in this state). The defendant need not be physically within the forum when this act or transaction occurs and a single such instance may suffice;
>
> (2) *the Georgia plaintiff* must have a legal cause of action in tort against the nonresident, which arises out of, or results from, the purposeful activity of the defendant involving this state; *a resident is the victim of a "tortious act" when he suffers an injury here* due to an act or omission of negligence occurring outside this state; and
>
> (3) If the requirements of (1) and (2) are satisfied, the exercise of jurisdiction over the nonresident must be "reasonable." [Emphasis added.]

*Delong, supra*, at 849. Plaintiff argues the fact that the Radcliffe plaintiffs are not Georgia residents should not require this court to decline to exercise personal jurisdiction and for support cites the case of *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984), in which the Supreme Court held that a plaintiff's residence in the forum state is not a requirement for the exercise of personal jurisdiction. Defendant claims that plaintiffs ignore part of the discussion in *Keeton* in which the court said plaintiff's residence is not *"completely* irrelevant"

[emphasis added] and argues that based upon this discussion this court should refrain from exercising jurisdiction. Defendant, however, addresses only part of this discussion and takes it completely out of context. The Supreme Court states "plaintiff's residence in the forum may ... enhance defendant's contacts with the forum" and goes on to say "[b]ut plaintiff's residence in the forum state is not a separate requirement, and lack of residence will not defeat jurisdiction established on the basis of defendant's contacts." In other words, plaintiff's residence may enhance defendant's contacts with the forum, but is not a basis for defeating jurisdiction that is otherwise established by defendant's contacts. Therefore, this court finds the fact that the Radcliffe plaintiffs are not Georgia residents does not prevent this court from exercising personal jurisdiction over defendant.

This court still must find sufficient minimum contacts of defendant with the State of Georgia in order to exercise personal jurisdiction. Defendants maintain that because both Radcliffe plaintiffs dealt with Umphrey Bowling, an Alabama real estate agent, rather than Prentiss Edwards, the Georgia real estate broker relied upon by the Cobb plaintiffs, then any claims of the Radcliffe plaintiffs have nothing to do with the State of Georgia. Plaintiffs, however, allege that although Umphrey Bowling may have been the Radcliffe plaintiffs' agent, Prentiss Edwards was the main contact with Founders and received information from Founders which Edwards then passed on to Bowling and upon which Bowling relied. Plaintiffs argue that because Edwards relayed this information to Bowling who in turn presented it to the Radcliffe plaintiffs who relied upon it, then both E.M. Radcliffe and Radcliffe Investment Company relied upon the assurances Founders made to Prentiss Edwards in Macon, Georgia. Because the Radcliffe plaintiffs relied upon and were injured by misrepresentations sent into Georgia by Founders, plaintiffs argue that it is proper for this court to exercise personal jurisdiction over Founders for the claims of E.M. Radcliffe and Radcliffe Investment Company.

Plaintiffs' brief makes reference to numerous affidavits and depositions explaining the relationship between Prentiss Edwards, Umphrey Bowling, Harold Williams, and E.M. Radcliffe. In a nutshell, this testimony sets forth that: Prentiss Edwards relayed information received by phone and mail from defendants to Bowling and that Edwards was to be a "clearinghouse" for information; Umphrey Bowling was told that Edwards would receive information in Macon, Georgia and would pass it on, and that Edwards could be used as a "conduit" for information. Bowling also testified that he relied on the information sent by Edwards. In the deposition of E.M. Radcliffe, Mr. Radcliffe testified that he knew Prentiss Edwards was talking with and working with Umphrey Bowling, that Bowling told Radcliffe he could call Edwards if he had any questions, and that Radcliffe had talked to Edwards himself. Even if the Radcliffe plaintiffs did not rely directly on Prentiss Edwards, this testimony shows that they were relying on information sent to Edwards in Georgia. Based upon this testimony, the relevant caselaw, and this court's discussion above, this court finds that the exercise of personal jurisdiction by this court over defendant Founders does not exceed the maximum limits of due process.[1]

Defendant John Edwards Nohrden's brief in support of motion for summary judgment is virtually identical to defendant Founders' brief; however, defendant Nohrden argues additionally that this court cannot exercise personal jurisdiction over him because he was not engaged in any personal business activities in Georgia, but only activities on behalf of the defendant Founders. In support of his argument Nohrden cites numerous cases from foreign jurisdictions; however, plaintiff cites the case of *Delong Equipment Company*

---

1. It is well established that the Georgia long-arm statute contemplates that jurisdiction shall be exercised over nonresident parties to the maximum extent permitted by due process. *Gold Kist, Inc. v. Baskin–Robbins Ice Cream Co.*, 623 F.2d 375, 378 (5th Cir.1980).

*v. Washington Mills Abrasive Co.*, 840 F.2d 843, 851 (11th Cir.1988), in which the Eleventh Circuit held that while the mere fact that a person is an officer of a corporation is not a proper basis for jurisdiction or venue, the personal participation by a corporate employee, officer, or director in the wrongful activities of a corporation is sufficient to make the individual, as well as the corporation, substantively liable for a tort. The Eleventh Circuit concluded:

> [I]t is reasonable and comports with notions of "fair play" and "substantial justice" to extend a forum's long-arm statute to a non-resident individual who commits an act in the forum for which he can be held substantively liable, even if his actions in and contacts with the forum were entirely in his capacity as a corporate officer or director. [footnote omitted].

In light of the Eleventh Circuit's holding in *Delong*, this court finds that it may properly exercise personal jurisdiction over defendant John Edward Nohrden.

■ Now that the court has determined it may properly exercise personal jurisdiction over defendants Founders Title and Nohrden, the court will address defendants' claim of improper venue. Plaintiffs agree with defendants that venue would not be proper in the Middle District of Georgia under 18 U.S.C. § 1965(a), but further states that venue would be proper with regard to the claims of all plaintiffs under 28 U.S.C. § 1391(b) which provides that the action may be brought in the judicial district "in which the claim arose." Defendants Founders and Nohrden argue in their briefs "the only way that venue can be proper in the United States District Court for the Middle District of Georgia is if the respective claims of the plaintiffs arose in this district." With regard to venue, defendants argue, as they did in their argument on jurisdiction, that neither of the Radcliffe plaintiffs' claims have contacts with the State of Georgia, that any alleged misrepresentations took place in Alabama, and that it is clear the causes of action alleged by Radcliffe plaintiffs did not arise in Georgia.

As this court has already discussed, even if the Radcliffe plaintiffs did not rely directly upon Prentiss Edwards, the testimony shows that they were relying on information that had been sent to Edwards in Georgia. The testimony set forth by plaintiffs, if believed, tends to show Prentiss Edwards to be the central figure or "conduit" for the dissemination of the alleged misrepresentations not only to his client, the Cobb plaintiffs, but also to the Radcliffe plaintiffs via Umphrey Bowling and/or Harold Williams. In discussing the "weight of the contacts" test in *Delong*, 840 F.2d 843, 855, the Eleventh Circuit said:

> Once it is determined that the weight of the contacts rests most heavily in a particular district, the court must look to see whether venue is established over each defendant. Evidence that a particular defendant has performed a substantial or significant act related to the claim in the district where contacts weigh most heavily suffices to establish venue over that defendant. [citations omitted].

Upon consideration of the arguments of the parties and the relevant case law and in accordance with the court's discussion above, this court finds not only that the "weight of the contacts" rest most heavily in the Middle District of Georgia, but that each defendant has performed in this district such a substantial or significant act related to the claims of each plaintiff in order to establish venue as to each defendant, and that the claims of each plaintiff arose in this district. Therefore, this court finds venue proper in this district as to each defendant.

■ The court will now decide the issue of whether, as asserted by defendants, neither of the Radcliffe plaintiffs have a cause of action under the Georgia RICO statute because Georgia substantive law does not apply to them. Under the conflict of law rules of Georgia, the forum state, "the law of the place of injury governs in tort liability, rather than the law of the place where the acts which allegedly caused the injury were committed." *Baltimore Football*

*Club, Inc. v. Lockheed Corporation,* 525 F.Supp. 1206 (N.D.Ga.1981).

Both E.M. Radcliffe and Radcliffe Investment Company are residents of the State of Arkansas and the land sale contracts of each were executed outside the State of Georgia. The land which was the subject matter of the contract of Radcliffe Investment Company is located in the State of Mississippi; however, the land which is the subject matter of the contract of E.M. Radcliffe is located in the State of Georgia. Therefore, Mississippi is the place of injury of Radcliffe Investment Company and Georgia is the place of injury of E.M. Radcliffe. For this reason, pursuant to the relevant Georgia conflict of law rule as set forth in *Baltimore Football Club,* for the state law RICO claim of Radcliffe Investment Company the substantive law of Mississippi must be applied, and for the state law RICO claim of E.M. Radcliffe the substantive law of Georgia must be applied.

■ The court will now decide whether the federal RICO claims of all plaintiffs are barred by the statute of limitations. In the case of *Agency Holding Corp. v. Malley-Duff and Associates,* 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987), the Supreme Court adopted a uniform four-year statute of limitations for federal civil RICO claims. Prior to its holding in *Agency Holding,* the Supreme Court noted that federal courts, when deciding civil RICO claims, applied the most closely analogous statute of limitations under state law. Under the "borrowing doctrine" the applicable statute of limitations "is that which the state would enforce had an action *seeking similar relief* been brought in a court of that state." *Persons v. United Parcel Service,* 502 F.Supp. 1176 (N.D.Ga.1980) [emphasis added]. As Georgia has a civil

RICO statute, this statute would be the "most closely analogous" under state law. The Georgia civil RICO statute of limitations is five years pursuant to O.C.G.A. § 16–14–8.

The question this court must decide is whether the four-year statute of limitations set forth in *Agency Holding Corp.* should be applied retroactively to dismiss plaintiffs' claims which were timely filed under the law as it existed at the time plaintiffs' case was filed. In accordance with the case law cited in the portion of plaintiffs' brief dealing with this issue, this court finds the new four-year statute of limitations should not be applied retroactively to bar plaintiffs' claims.[2] However, this court does find for the reasons set forth in defendants' briefs that plaintiffs' claims for common law fraud are barred by Georgia's four-year statute of limitations set forth in O.C.G.A. § 9–3–31.

The final issue this court must address is whether plaintiffs have failed to establish the "continuity" requirement, required for maintaining a RICO action, set forth in *Sedima v. Imrex Company, Inc.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). For the reasons set forth in the portion of plaintiffs' brief concerning "continuity" this court finds the continuity requirement has clearly been met.

### Conclusion

In accordance with this court's discussion above, plaintiffs Founders Title and John Edward Nohrden's motions for summary judgment are GRANTED only with respect to plaintiffs' common law fraud claims being barred by Georgia's four-year statute of limitations and with respect to Radcliffe Investment Company's failure to state a state law RICO claim. With regard to all

---

**2.** Defendants further argue that even if this court finds that plaintiffs' claims are not barred by the new four-year statute of limitations set forth in *Agency Holding Corp.,* the federal RICO claim of Radcliffe Investment Company would still be barred because the substantive law of a foreign jurisdiction would apply to its state law RICO claim, thereby depriving Radcliffe Investment Company of the benefit of the "analogous" five-year statute of limitations of the State of Georgia for state RICO claims. Defendants, in

another portion of their brief, cite the case of *Fimian v. Guy F. Atkinson Co.,* 209 Ga. 113, 70 S.E.2d 762 (1952), for the proposition that Georgia courts apply the substantive law of the state in which the tort occurred, but apply the statute of limitations of Georgia. As this court has already determined, Mississippi law would apply to Radcliffe Investment's state law claim. Mississippi has a state RICO statute but Georgia's "analogous" five-year statute of limitations would still apply.

other issues defendants' motions are DE-NIED.

SO ORDERED.